

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

ENTERED
11/26/2008

| | | |
|---|---|---|
| **IN RE:** | § | |
| **MARCO A. CANTU,** *et al* | § | **CASE NO: 08-70260** |
| **Debtor(s)** | § | |
| | § | **CHAPTER  11** |
| | § | |
| **GUERRA & MOORE, LTD., LLP** | § | |
| **Plaintiff(s)** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 08-07035** |
| | § | |
| **MARCO A. CANTU** | § | |
| **Defendant(s)** | § | |

## MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT

For the reasons set forth below, the Court denies the motion for summary judgment filed

by Guerra & Moore, LTD., LLP ("Guerra & Moore") (docket no. 7).

### I. Jurisdiction

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and

28 U.S.C. § 157.  This is a core proceeding as defined in 28 U.S.C. § 157(b)(2).  Venue is proper

in this District pursuant to 28 U.S.C. § 1409.

### II. Procedural Background

Guerra & Moore filed a lawsuit on or about May 14, 2007 in the 111th District Court of

Webb County, Texas against Defendant, Marco A. Cantu ("Cantu"), for defamation and tortious

interference with contract.  A jury found in favor of Guerra & Moore for $1.6 million in actual

damages on the tortious interference claims, which the state court accepted.[1]

---

[1]  The defamation claims were not submitted to the jury.

Before the state court entered its judgment, Cantu filed a chapter 11 bankruptcy petition on May 6, 2008.  The Court granted relief from the automatic stay to allow the state court to enter its judgment.

The state court entered its final judgment on August 4, 2008.[2]  The state court judgment held that Cantu intentionally interfered with Guerra & Moore's contract with Zacarias Gonzalez and intentionally interfered with Guerra & Moore's prospective contract with Julian Gonzalez. These two holdings were based on the jury's express affirmative findings of intentional interference, defined as interference committed with the desire to interfere with the contract or with the belief that interference is substantially certain to result.  The jury abstained from finding whether the harm to Guerra & Moore resulted from malice, defined as a specific intent by Cantu to cause substantial injury or harm to Guerra & Moore, for the purpose of assessing exemplary damages.[3]  The judgment upheld the jury's assessment of $1.6 million in actual damages.

On August 4, 2008, Guerra & Moore initiated this adversary proceeding.  Guerra & Moore filed a motion for summary judgment on August 23, 2008.  Guerra & Moore asserts that Cantu is collaterally estopped from re-litigating the issue of intentional interference.  It further argues that the jury's findings of intentional interference are sufficient to support an exception to discharge under § 523(a)(6), which excepts from discharge debts for "willful and malicious injury by the debtor."  11 U.S.C. § 523.

---

[2]  Cantu filed a motion for new trial, which was denied by written order on August 22, 2008.

[3]  This relates to Question 6 of the jury charge.  The instructions to Question 6 state:

> Answer the following question only if you unanimously answered "Yes" to Question 1 and/or Question 2.  Otherwise, do not answer the following question.
>
> To answer "Yes" to the following question, your answer must be unanimous.  You may answer "No" to the following question only upon a vote of ten or more jurors.  Otherwise, you must not answer the following question.

Question 1 and Question 2 dealt with charges of intentional interference.

Cantu responds that the jury never answered the question of malice in the state court lawsuit.

On September 20, 2008 , the Court requested the parties to submit additional memoranda of law on whether a finding of intentional interference with contract under Texas state law constitutes a finding of "willful and malicious injury" as required by § 523(a)(6) of the Bankruptcy Code.

Guerra & Moore explains in its memorandum that intentional interference with contract under Texas state law requires that the actor desires to cause interference by his act or that he believes interference will substantially be certain to result from his act.  Guerra & Moore argues that this intent requirement is identical to § 523(a)(6)'s "willful and malicious injury" requirement under 5th Circuit law in *Miller*.  "Willful and malicious injury" requires either a subjective motive to cause harm or an objective substantial certainty of harm.  *Keaty v. Raspanti* (*In re Keaty*), 397 F.3d 264, 273-74 (5th Cir. 2005) (citing *Miller v. J.D. Abrams, Inc.* (*In re Miller*), 156 F.3d 598, 606 (5th Cir. 1998)).  Guerra & Moore basically reasons that the willful and malicious injury was the intentional interference itself.

Cantu re-asserts in its memorandum that there was no finding of malice by the jury. Cantu also points out that the state court judgment contains a Mother Hubbard clause, which states that "[a]ll relief requested in this case and not expressly granted is denied."  Cantu goes as far as arguing that there was a finding of no malice.  Also citing *Miller*, Cantu contends that there is a difference between an intentional act that results in injury and an act done with the actual intent to cause injury.  The latter is what is required under § 523(a)(6).  *Miller*, 156 F.3d at 603. Cantu's position is that the jury's finding of intentional interference under Texas state law is separate from and not equivalent to a finding of "willful and malicious injury."

The issue is whether a judgment under Texas state law finding intentional interference with contract, without a finding of malice for the purpose of exemplary damages, constitutes a finding of "willful and malicious injury" for § 523(a)(6) to apply.  If the answer is yes, then an analysis of the doctrine of collateral estoppel is required.  If the answer is no, then no analysis of the doctrine of collateral estoppel is required.  Instead, the fact question remains as to whether Cantu intended "willful and malicious injury" under § 523(a)(6) at the time he interfered with Guerra & Moore's contract and prospective contract.

## III.  Summary Judgment Standard

A party seeking summary judgment may demonstrate:  (i) an absence of evidence to support the non-moving party's claims or (ii) the absence of a genuine issue of material fact. *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 562 (5th Cir. 2005).  Material facts are those that could affect the outcome of the action or could allow a reasonable fact finder to find in favor of the non-moving party. *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 529 (5th Cir. 2005).

The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.  At all times, a court views the facts in the light most favorable to the non-moving party.  *Rodriguez v. ConAgra Grocery Products, Co.*, 436 F.3d 468, 473 (5th Cir. 2006).  However, to weigh evidence would result in a credibility determination that is not part of the summary judgment analysis.  *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 762 (5th Cir. 2001); *see MAN Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478 (5th Cir. 2006).  A court is not obligated to search the record for the non-moving party's evidence.  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

If the movant does not bear the burden of proof, the movant must show the absence of sufficient evidence to support an essential element of the opposing party's claim. *Id.; see also Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005); *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006). The movant may seek summary judgment if insufficient evidence has emerged from discovery to support the non-moving party's claims. 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2727 (3d ed. 1998). At this time the non-moving party must respond with sufficient evidence to support the challenged element of its case or present evidence to raise a material issue of fact. *Id.; Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986); *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 402 (5th Cir. 2005). Ultimately, the motion should be granted if the non-moving party cannot produce evidence to support an essential element of its claim. *See Condrey*, 431 F.3d at 197.

## IV.  Exception to Discharge for Willful and Malicious Injury Under § 523(a)(6)

Under § 523(a)(6), a debt "for *willful and malicious injury* by the debtor to another entity or to the property of another entity" is excepted from discharge. 11 U.S.C. § 523(a)(6) (emphasis supplied). Willful and malicious injury requires an actual intent to cause injury. *See Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). In *Kawaauhau*, the Supreme Court stated that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Id.* (emphasis original).

The Fifth Circuit expanded the Supreme Court's reasoning in *Miller* by doing its own analysis of "willful" and "malicious" as separate modifiers. It concluded that under *Kawaauhau*, willful and malicious injury "is a unitary concept entailing a single two-pronged test" for actual intent to cause injury. *Miller*, 156 F.3d at 603. It held that either a subjective motive to harm *or*

an objective substantial certainty of harm would be sufficient to find actual intent to cause injury. *Id.* at 606 (emphasis supplied).

A.  Subjective Motive to Harm

In *Miller*, the Fifth Circuit equated having a subjective motive to harm to acting with the desire to cause injury.  *See Id.* at 604.  It also stated that a finding of actual malice under Texas state law, defined to include evil motive, would be sufficient to find subjective motive to harm. *Id.*

Under Texas state law, intent to injure is not a required element of tortious interference; rather, intent to cause the consequences of one's act or belief that the consequences are substantially certain to result from one's act is required.  *Southwestern Bell Telephone Co. v. John Carlo Tex., Inc.*, 813 S.W.2d 613, 619 (Tex. App.–Houston [14th Dist.] 1991) (citing RESTATEMENT (SECOND) OF TORTS § 8A (1965)), *rev'd on other grounds*, 843 S.W.2d 470 (Tex. 1992).  "Intent to injure indicates actual malice, a state of mind that must be shown to recover exemplary damages. Actual malice or intent to injure is not a required element where a plaintiff seeks compensatory damages for tortious interference . . . ."  *Id.* (citations omitted).

Here, the jury spoke only to Cantu's intent to cause interference and did not speak to Cantu's intent to injure, i.e. actual malice.  The jury found Cantu liable for tortious interference with contract and with prospective contract.[4]  Question 6 of the jury charge asked whether the harm to Guerra & Moore resulted from malice, defined as a specific intent by Cantu to cause substantial injury or harm to Guerra & Moore, for the purpose of assessing exemplary damages. The jury abstained from answering the question.  As a result, the jury's findings of intentional interference alone are insufficient to show subjective motive to injure.

---

[4] For the purpose of simplicity, all analyses hereafter apply equally to intentional interference with contract as well as to intentional interference with prospective contract.

B.  Objective Substantial Certainty of Harm

Actual intent to cause injury could also be shown by an objective substantial certainty of harm.  Guerra & Moore advances a number of theories that a finding of intentional interference under Texas state law suffices also as a finding of an objective substantial certainty of harm.  The Court evaluates each one in turn.

First, Guerra & Moore asserts that the Supreme Court in *Kawaauhua* left intact, what Guerra & Moore characterizes as the Eighth Circuit's holding, that debts arising from intentional torts are categorically exempt from discharge under § 523(a)(6).  As a result, Guerra & Moore argues that Cantu's laibility of $1.2 million for intentional interference is excepted from discharge.

Guerra & Moore's argument is flawed.  While the Supreme Court agreed with the Eighth Circuit's holding in *Kawaauhua*, the Supreme Court's position is different than what Guerra & Moore states.  In *Kawaauhua*, the Supreme Court held "that debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."  *Kawaauhua*, 523 U.S. at 64.  It commented that "the (a)(6) formulation triggers in the lawyer's mind the category of 'intentional torts,' *as distinguished from negligent or reckless torts*.  Intentional torts generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'"  *Id.* at 61-62 (first emphasis supplied, second emphasis original).

The Supreme Court never categorically stated that all intentional torts were exempt from discharge under § 523(a)(6).  Rather, it did the contrary.  It emphasized that those intentional torts within the contemplation of (a)(6) were where the actor intends the consequences of his act, i.e. intentional injury, and not simply the act itself.  *See Id.* at 61.  For a debt arising from

intentional interference with contract to be excepted from discharge under § 523(a)(6), actual intent to injure must be shown.

The Court's reading comports with the Fifth Circuit's own analysis of *Kawaauhua* in *Miller*. In *Miller*, the Fifth Circuit notes that the Supreme Court's comment on intentional torts and § 523(a)(6) in *Kawaauhua* represents "acknowledgement of a logical association" that "avoids equating § 523(a)(6) torts and intentional torts, and with good reason." *Miller*, 156 F.3d at 605. "The category of intentional torts . . . is broader" than those involving actual intent to cause injury. *Id.* at 604. "Merely because a tort is classified as intentional does not mean that any injury caused by the tortfeasor is willful." *Id.* It held that "the label 'intentional tort' is too elusive to sort intentional acts that lead to injury from acts intended to cause injury." *Id.*

Second, Guerra & Moore contends that the intent required for intentional interference is the same that is required under § 523(a)(6) because they are both based on § 8A of the Restatement (Second) of Torts. Guerra & Moore also insists that an objective substantial certainty of harm is the same standard as that of substantially certain to result in the consequences.

Guerra & Moore's contention is one that the Supreme Court and the Fifth Circuit have resolved, which is that for an exception under § 523(a)(6) to apply, more than an act that leads to injury is required. *Kawaauhua*, 523 U.S. at 61-62; *Miller*, 156 F.3d at 603. Even Guerra & Moore's own supporting citation to *Williams* is clear on this point:

> [T]he language of § 523(a)(6) mirrors the definition of an intentional tort . . . .
> . . . . Despite similarities in the language used to describe an injury under § 523(a)(6) and intentional torts, § 523(a)(6) creates a narrower category of tortious conduct.

*Williams v. Int'l Bhd. of Elec. Workers Local 520* (*In re Williams*), 337 F.3d 504, 508-09 (5th Cir. 2003). To be clear, the Court analyzes § 8A of the Restatement.

Section 8A of the Restatement states "[t]he word 'intent' is used . . . to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." RESTATEMENT (SECOND) OF TORTS § 8A (2008). The Restatement describes intentional interference with contract by a person as "[o]ne who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract . . . ." RESTATEMENT (SECOND) OF TORTS § 766 (2008).

In the context of intentional interference, desire to cause consequences of one's act or belief that the consequences are certain to result from one's act refers to "*interference* [that] is certain or substantially certain to occur as a result of" one's act. RESTATEMENT (SECOND) OF TORTS § 766 cmt. j (2008) (emphasis supplied). The word "consequences" mentioned in Section 8A's intent explanation in the world of intentional interference refers to the interference itself. It does not refer to injury or harm as a result of interference. This difference, although slight, is crucial.

Guerre & Moore cites to *Salisbury* and *Milton*, cases on intentional interference under Mississippi state law, to further support its position. In *Salisbury* and *Milton*, a bankruptcy court for the Northern District of Mississippi found that "[t]he substantial certainty standard for the level of intent required for a finding of tortious interference with a contract [under Mississippi state law] appears to be identical to the Fifth Circuit's 'objective substantial certainty of harm' standard required for a finding of willful and malicious injury under § 523(a)(6) of the Bankruptcy Code." *In re Salisbury*, 331 B.R. 682, 688 (Bankr. N.D. Miss. 2005); *In re Milton*, 355 B.R. 575, 580 (Bankr. N.D. Miss. 2006). As a result of that holding, the bankruptcy court

held that the debts in both cases due to intentional interference with contract were non-dischargeable under § 523(a)(6).  *Salisbury*, 331 B.R. at 693; *Milton*, 355 B.R. at 587.

Texas state law in the area of intentional interference with contract is unlike Mississippi state law.  Mississippi state law requires for intentional interference with contract:  (1) the acts were intentional and willful; (2) *that they were calculated to cause damage to the plaintiffs in their lawful business*; (3) *that they were done with the unlawful purpose of causing damage and loss*, without right or justifiable cause on the part of the defendant; (4) that actual damage or loss result.  *Salisbury*, 331 B.R. at 687 (emphasis supplied).   Elements (2) and (3) together require an intent finding of malice as well as an objective substantial certainty of harm.  *See Id.* at 686-88.  As a result, debts from intentional interference with contract under Mississippi state law are non-dischargeable under § 523(a)(6).

Texas state law does not require a finding of malice or an objective substantial certainty of harm.  Texas state law requires for intentional interference of contract:  (1) existence of a valid contract; (2) defendant willfully and intentionally interfered with the contract; (3) *the interference was a proximate cause of the plaintiff's injury*; (4) the plaintiff suffered actual damages or loss.  *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002) (emphasis supplied).  Under Texas state law, there is no intent to injure element.  *Butnaru*, 84 S.W.3d at 207.  The Fifth Circuit has explicitly held that a finding of injury as proximately caused by an act is not the same as a finding of an objective substantial certainty of harm.  This is because proximate causation is a lower standard.  *Miller*, 156 F.3d at 605.  Thus, a debt from intentional interference under Texas state law is not automatically non-dischargeable under § 523(a)(6).

Here, the jury expressly found that Cantu's interferences proximately caused Guerra & Moore injury and assessed $1.2 million in actual damages.  But, the jury found nothing more

than proximate causation.  As such, the jury's finding of proximate causation alone is inadequate to show that Cantu acted with an objective substantial certainty of harm to constitute actual intent to injure.

## VI. Conclusion

Guerra & Moore's motion for summary judgment is denied.  A separate order will be issued.

Signed at Houston, Texas, on November 26, 2008.

MARVIN ISGUR
United States Bankruptcy Judge